UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN R. HARTLEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2: 13-cv-1863 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Act. Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment are pending. For the reasons discussed below, the court will grant the Commissioner's cross-motion for summary judgment and deny plaintiff's motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed his applications for DIB and SSI on April 23, 2010. Administrative Record ("AR") 73–74, 238–47. Plaintiff's application for DIB alleged disability beginning on October 1, 2007, AR 73, while his application for SSI alleged disability beginning on September 1, 2000, AR 238. Plaintiff's applications were denied initially and again upon reconsideration. AR 25–

1

26, 30–33, 248–53. On January 8, 2013, a hearing was held before administrative law judge ("ALJ") Bradlee S. Welton. AR 13–24. Plaintiff appeared with a non-attorney representative at the hearing, where he and a vocational expert testified. AR 13. During the hearing plaintiff's representative requested permission to amend plaintiff's application to reflect an alleged onset date of July 6, 2011. AR 290–91. After confirming with plaintiff that he understood the implications of changing his alleged onset date, the ALJ granted his request.[1] AR 290–91. In a decision dated March 21, 2012, the ALJ found plaintiff not disabled. AR 24.

The ALJ made the following findings (citations to 20 C.F.R. and Exhibits omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2007, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with chronic pain, status post remote neck surgery with pain, chronic obstructive pulmonary disease, and right biceps tear with weakness.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry 10 pounds occasionally and frequently and sit for 6/8 hours. He can stand/walk for 2/8 hours, with a sit/stand option every 30 minutes so that claimant can stand for one to two minutes on station. He can occasionally climb ramps/stairs, stoop, balance, crouch, crawl and kneel. However, he cannot perform climbing of ladders/ropes/scaffolds and must avoid moderate exposure to flumes, [sic] dust and other lung irritants.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on July 6, 1956 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.

---

[1] The ALJ's decision erroneously cites plaintiff's alleged onset date as October 1, 2007. AR 13, 16, 22.

      9. The claimant has acquired work skills from past relevant work.

      10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

      11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2007, through the date of this decision.

AR 13–24.

    Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on July 11, 2013, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 6–8.

## FACTUAL BACKGROUND

    Born on July 6, 1956, plaintiff was 55 years old on the alleged onset date of disability and 56 years old at the time of the administrative hearing. AR 16, 22. Plaintiff has not engaged in substantial gainful activity since 2007, when he worked as a used recreational vehicle (RV) dealer. AR 101.

## LEGAL STANDARDS

    The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

    The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v.

1  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

2      Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

    "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

    The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

    Plaintiff seeks summary judgment on the grounds that (1) the ALJ erred in finding that plaintiff does not suffer from a listed or listing-level impairment; and (2) the ALJ failed to make sufficient findings on the transferability of plaintiff's work skills. The Commissioner, in turn, argues that the ALJ's findings are supported by substantial evidence and are free from legal error. The court finds that (1) the ALJ's finding that plaintiff does not suffer from a listed or listing-level impairment was not in error; and (2) while the ALJ did fail to make sufficient findings on the transferability of plaintiff's work skills, that error was harmless.

////

A.   Listing-Level Impairment

Plaintiff argues that the ALJ failed to properly assess whether he suffers from chronic pulmonary insufficiency, a listed-level impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.02 ("Rule 3.02"). ECF No. 14 at 4–6.[2] Plaintiff contends that he meets Rule 3.02's requirements for chronic pulmonary insufficiency based on his actual height. Id. In the alternative, plaintiff argues that the ALJ erred by not more fully discussing whether he suffers from a listing level impairment given his medical history. Id. at 6–7. The Commissioner, on the other hand, argues that based on his FEV1 test plaintiff did not meet his burden of establishing he suffers from a listed or listing-level impairment. ECF No. 16 at 5–7. The court finds that substantial evidence supports the ALJ's finding that plaintiff does not suffer from a listed or listed level impairment.

   1.   Legal Standards

At the third step of the five-step sequence for evaluating disability claims, a claimant can establish a disability by showing that he suffers from a listed impairment or an impairment that meets or equals the criteria of an impairment listed in the regulations. See 20 C.F.R. § 416.920(a)(4)(iii). The claimant bears the burden of establishing that he suffers from a listed or listed-level impairment. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). In fact, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Id. at 683.

   2.   Regulatory Standards for Chronic Pulmonary Insufficiency

The regulations specify pulmonary function test results that determine qualification for the listed impairment of chronic pulmonary insufficiency. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.000(E). The prescribed test takes the form of a one-second forced expiratory volume (FEV1), which the claimant performs three times, both pre- and post-bronchodilation. Id. The attempt that results in the highest FEV1 score is then compared to the FEV1 scores in the chronic

---

[2] Page numbers reflect the pagination used in the court's electronic filing system.

pulmonary insufficiency table, which organizes scores in relation to the claimant's height without shoes. Id.; Rule 3.02 & Table I. For an individual who is 66–67 inches tall, Rule 3.02 requires an FEV1 equal to or less than 1.35. For an individual who is 68–69 inches, on the other hand, Rule 3.02 requires an FEV1 that is equal to or less than 1.45. Id.

3. <u>Analysis</u>

The ALJ found that plaintiff suffers from chronic obstructive pulmonary disease among other severe impairments, AR 16, but found that none of his impairments meet the severity of a listed impairment, AR 18. Here plaintiff argues that he meets Rule 3.02's requirements for chronic pulmonary insufficiency because he is more than 67 inches tall and his pulmonary function test resulted in an FEV1 of 1.39. He points out that the ALJ failed to explicitly address the pulmonary insufficiency listing. ECF No. 14 at 6.

First, the ALJ has no obligation to consider, sua sponte, whether plaintiff suffers from an impairment that equals a listed impairment. The burden was on plaintiff to establish that he suffers from a listing-level impairment. <u>Burch</u>, 400 F.3d at 683.

Second, the medical record supports the conclusion that plaintiff does not meet the standards for the chronic pulmonary insufficiency listing. The report of plaintiff's pulmonary function test reflects an FEV1 of 1.39 and a height of 65.75 inches, as measured for purposes of the test. AR 197. This FEV1 would only support a listed impairment finding in a person at least 68 inches tall. The only evidence that plaintiff is 68 inches tall comes from the medical notes of Dr. N. Haroun, M.D., which indicate plaintiff's self-reported height as 68 inches. AR 178. Plaintiff's medical reports otherwise uniformly indicate that he is under 68 inches tall without shoes. AR 193, 197, 224, 228.

The State agency reviewing physician, C. Eskander M.D., noted in his report that there was inconsistent evidence in the record regarding plaintiff's height. AR 178. However, because none of the medical records indicate a height of 68 inches or more, a listed impairment finding was not required based on the FEV1 of 1.39.

Plaintiff's theory appears to be that an FEV1 of between 1.35 and 1.45 should qualify an individual whose height is between 67 inches and 68 inches. Even if this was correct – which no

6

authority supports – only one medical source in the record reflects a height between 67 and 68 inches. Dr. Siciarz measured plaintiff's height as 67.5 inches in November 2010. AR 193. Two other doctors measured his height as 67 inches exactly. AR 224 (Dr. Porter in April 2011), 228 (Dr. Kinnison in July 2011). At 67 inches, the maximum FEV1 to meet the listed impairment is 1.35. Rule 3.02 & Table I. Plaintiff's FEV1 exceeded that threshold.

Because substantial evidence in the record supports a finding that plaintiff's pulmonary deficiency does not meet the criteria for a listed impairment, the ALJ did not err.

B.  Transferable Work Skills

Plaintiff argues that the skills associated with his previous jobs—financial services insurance sales representative, RV sales person, and insurance sales agent—are not transferable to the jobs the vocational expert testified he could perform—appointment clerk; sorter, clerical; and telephone solicitor. ECF No. 14 at 7–12. In support of his argument, he relies on the fact that the materials, products, subject matter and services ("MPSMS") codes and work fields of his previous jobs differ from those the ALJ found he could perform. Id. at 12–13. Plaintiff also argues that the ALJ committed reversible error in failing to question the vocational expert concerning potential deviation from the Dictionary of Occupational Titles ("DOT"). Id. at 14–15. The Commissioner, on the other hand, argues that the ALJ appropriately found plaintiff to have transferable work skills given his past work experience. ECF No. 16 at 7–12. Further, the Commissioner argues that there is no conflict between the vocational expert's testimony and the DOT. Id. at 11–12. For the reasons discussed below the court finds that (1) the ALJ's finding that plaintiff possesses transferable work skills is supported by substantial evidence; and (2) although the ALJ erred in failing to ask the vocational expert if her testimony was consistent with the DOT, that error was harmless.

1.  Legal Standards

When an ALJ determines that a claimant cannot return to past relevant work at step four, the burden then shifts to the Commissioner to establish that the claimant is capable of performing other substantial gainful work at step five. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). In making a step five determination, the ALJ must first determine whether

the claimant's exertional limitations by themselves merit a finding of disability under the decisional grids listed at 20 C.F.R. Part 404, Subpart P, Appendix 2. Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th Cir. 2006). If the grids do not mandate a finding of disability then the ALJ has the option of calling a vocational expert to testify on the existence of jobs in the national economy that plaintiff is capable of performing. Tackett, 180 F.3d at 1100–01. The ALJ must consult with vocational expert, however, if the claimant suffers from sufficiently severe non-exertional limitations, which are not contemplated by the grids. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 577 (9th Cir. 1988).

The decisional grids listed at 20 C.F.R. Part 404, Subpart P, Appendix 2 are individualized according to occupational bases, including: "'[m]aximum sustained work capacity limited to sedentary work,' '[m]aximum sustained work capacity limited to light work,' and '[m]aximum sustained work capacity limited to medium work.'" Tackett, 180 F.3d at 1101 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00). The decisional tables then recommend a decision of disabled or not disabled based on the age, educational attainment, and skill level of the claimant. 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00. The decisional grid for claimants limited to sedentary work recommends that those of advanced age (55–60) with a high school education or more and non-transferable work skills be considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.06. However, the same decisional grid recommends that the same claimant not be considered disabled if he has transferable work skills.[3] Id. 201.07.

If the ALJ chooses to call on a vocational expert to testify he or she will "pose hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." Tackett, 180 F.3d at 1101 (quoting Gamer v. Secretary of Health and Human Servs., 815 F.2d 1275, 1279 (9th Cir.1987)). Based on the ALJ's description of the claimant's age range, work experience, educational attainment, and exertional and non-exertional limitations the vocational expert will opine on what work the claimant is capable of

---

[3] 20 C.F.R. Part 404, Subpart P, Appendix 2, 200(f) also advises the following: "In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."

8

performing that exists in substantial numbers in the national economy.  20 CFR § 404.1560(b)(3); Tackett, 180 F.3d at 1100.  Accordingly, "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."  Id. at 1101.

Regardless of whether the ALJ's disability determination relies upon the grid or the testimony of a vocational expert, he or she must make specific findings on the transferability of work skills when they are relevant to the ultimate determination.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) (citing Social Security Ruling 82-41).[4]  According to 20 C.F.R. § 404.1568(d)(2), transferable skills are most likely to be found amongst jobs in which "(i) The same or a lesser degree of skill is required; (2) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved."  There are varying degrees of transferability, and all three factors need not be present for a skill to be considered transferable.  Id. 404.1568(d)(3); see also Aldrich v. Barnhart, 151 F. App'x 561, 562 (9th Cir. 2005).

2.   Analysis

At the January 8, 2013, hearing, the ALJ asked the vocational expert if plaintiff's prior employment imparted transferable work skills.  AR 311.  The vocational expert opined that plaintiff's past employment conferred transferrable skills including "working in an office environment, like understanding basic office equipment, basic office procedures."  Id.  In

---

[4] Regarding the transferability of skills, Social Security Ruling ("SSR") 82–41 states, in relevant part:

> When the issue of skills and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.
>
> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision . . . . It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

9

response to questions by the ALJ, plaintiff added that he has experience using office equipment, including faxing and copying machines. Id. Plaintiff's representative argued that plaintiff's use of computer programs in his past work as a financial advisor was not a transferable skill because he used solely proprietary programs. Id. In response, the ALJ noted that plaintiff has other skills associated with working in an office environment. AR 313–14. Accordingly, the ALJ found that plaintiff possesses transferrable skills, stating:

> Transferable skills identified by the vocational expert include the following skills: skills developed in the office environment including communicating with customers, operating office equipment such as telephones, fax machines, computers, copy machines, adding machines, filling out forms, and keeping records.

AR 22.

The court finds that the ALJ's finding that plaintiff possesses transferable work skills is supported by substantial evidence. Plaintiff's own testimony confirms that he has experience working with office equipment including telephones, fax machines, computers, and copy machines. AR 311. Further, the ALJ's decision notes that plaintiff's previous jobs gave him skills in customer service. AR 22. These skills have broad applicability across industry lines. See Social Security Ruling ("SSR") 82–41, 1982 WL 31389, at *6 ("[W]here job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment . . . ."). Additionally, plaintiff's contention that the vocational expert must rely on matching work fields and MPSMS codes when analyzing transferability is unsupported by any legal authority. In fact, the regulations specify that a complete similarity of degree of skill, tools and machinery used, and raw materials, products, processes or services involved "is not necessary for transferability." 20 C.F.R. § 404.1568(d)(3); see also Aldrich, 151 F. App'x at 562.

Further, the court finds that while the ALJ erred in failing to ask the vocational expert whether her opinion conflicted with the DOT, his error was harmless. SSR 00–4p provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or

10

occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles ]." The Ninth Circuit has interpreted SSR 00–4p to mean that an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). This error is harmless, however, if no conflict existed or if the vocational expert "'provided sufficient support for [his] conclusion so as to justify any potential conflicts.'" Coleman v. Astrue, 423 F. App'x 754, 756 (9th Cir. 2011) (citing id. at 1154 n.19).

The Commissioner does not dispute that the ALJ failed to ask the vocational expert whether her opinion contradicted the DOT. Accordingly, the court finds that the ALJ did err. Nevertheless, plaintiff fails to establish that he was actually harmed by the ALJ's error. Plaintiff points to no contradiction between the vocational expert's testimony and the DOT. As the court has already explained, nothing in the regulations or the DOT requires a complete similarity of degree of skill, tools used, or products, processes or services involved. 20 C.F.R. § 404.1568(d)(3). Additionally, the vocational expert's understanding of plaintiff's previous jobs and how they imparted transferable skills is consistent with the DOT. AR 311–12. Finally, plaintiff's non-attorney representative was incorrect when he argued at the January 8, 2014, hearing that the vocational expert's opinion conflicted with SSR 83.12. SSR 83.12 requires that where the claimant has a residual functional capacity compatible with the performance of either sedentary or light work, except that the person must alternate periods of sitting and standing, the vocational expert must be consulted to clarify the implications of that limitation for the occupational base. The ALJ performed this inquiry when he asked the vocational expert whether the fact that plaintiff had to stand up and stretch every half an hour affected her testimony identifying jobs within plaintiff's occupational base. AR 316–17. The vocational expert responded that it did not. Id.

Accordingly, the court finds that (1) the ALJ's finding that plaintiff possesses transferable work skills is supported by substantial evidence; and (2) although the ALJ erred in failing to ask

the vocational expert if he testimony conflicted with the DOT, that error was harmless.

## CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: November 11, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE